## JUDICIAL NOTICE OF THE RESULT OF A LOCAL OPTION ELECTION.

Circuit Court of Columbiana County.

EMMA GEISSE v. THE STATE OF OHIO.

Decided, November 5, 1910.

*Liquor Laws—Prosecution for Selling Intoxicating Liquor in Dry Territory—Failure to Prove the Voting of the Territory Dry—Of What Facts a Court May Take Judicial Notice.*

An election which resulted in voting a county "dry" under the Rose local option law is a matter of such common notoriety that a judge, before whom one is afterward brought for trial on the charge of violating the law thus rendered operative in the county, may take judicial notice of the holding of the election and its result; and in such a case a conviction will not be set aside for failure to specifically prove the holding of the election and its result.

*W. F. Lones,* for plaintiff in error.
*W. A. O'Grady,* contra.

FILLIUS, J. (orally) ; LAUBIE, J., and METCALFE, J., concur.

This case is here upon a petition in error to reverse the judgment of the mayor of the city of Wellsville finding and adjudging Emma Geisse guilty of the charge there preferred against her of selling intoxicating liquors contrary to the local option law. Upon that trial a bill of exceptions was taken setting forth all the evidence, and error was thereupon prosecuted to the court of common. pleas where the judgment of conviction was affirmed, and this proceeding in error is to reverse both judgments.

The main contention of counsel for plaintiff in error is that there is no evidence in this record warranting the conviction of Emma Geisse, and specifically that there is no evidence in this record that Columbiana county had been voted "dry," and inasmuch as the charge against her was for violating the "dry" statute she can not be convicted. We have read this record through with great care from beginning to end, with a view to ascertaining whether there is any testimony tending to show

that Columbiana county had voted "dry" prior to the commission of the offense and so given validity to the local option law within its boundaries.

There are some fragments of testimony in the case that would point towards Wellsville being a "dry" town, but nothing seems to point towards the county being a "dry" county. Under our statutes, a town may vote itself dry and the county outside of it remain "wet." These fragments of testimony occuring in the record referring to the town as being "dry" may as well be referred to the town of Wellsville being "dry" as to the fact that the county is "dry." So we find ourselves unable to say that there is evidence in the record showing that Columbiana county voted "dry."

This necessarily leads to a reversal of these judgments, unless the contention of counsel for the state be correct, that the trial court may have taken judicial notice of the fact that Columbiana county was a "dry" county, and that for the purpose of sustaining this conviction this court will take judicial notice of what the trial court might have taken notice of and so sustain this conviction.

This contention leads to a discussion of that proposition. Now, of course, whatever courts may take judicial notice of needs no proof. The statute of the state especially so provides, and beyond that it has so been repeatedly held by courts of last resort everywhere. Early in Ohio, in the case of *Brown* v. *State*, 11 Ohio Report, page 276, the Supreme Court of the state held that the court would take judicial notice of general, local and special acts.

"The doctrine of judicial notice is that there are certain facts of which the court will not require evidence, because they are so well known, so easily ascertainable, or so related to the official character of the court, that it would not be good sense to do so." *McKelvey on Evidence,* page 18.

Within the doctrine of judicial notice thus stated, it seems to us the trial court may have taken judicial notice of the election and its result. The facts leading to the election, the campaign preliminary to the election itself, were in their very nature well

known to every citizen and every inhabitant of Columbiana county. It is not unreasonable to say that perhaps no fact of any kind was better known by all the people, old and young, male and female, ignorant and educated, than the fact that an election had taken place in Columbiana county upon the question whether the sale of intoxicating liquors should be prohibited or continued in this county. Nor was the result of that election less well known to every person within the county. Those who were in favor of voting the county "dry," who supported that side and worked for it, and those who voted against it and labored to bring about its defeat, constituted practically the entire community. If the county voted "dry" as this county did, then followed immediately important consequences. A large number of places that were occupied as places for carrying on the traffic became closed. The public revenues became diminished by the amount of income that was cut off from this source of tax. The various towns and communities in the county immediately recognized a complete change in the condition of things in the places of business, so that the fact that an election of that sort was held and the fact resulting in consequence of the election were facts so well known and so easily ascertainable that there would seem to be no doubt but that they belong to a class of facts coming within the rule above stated.

It is to be understood that within the class of facts that courts will take judicial notice of there is a certain class that a court is bound to take judicial notice of, and a certain other class of facts of which it may, in its discretion, take notice.

Without stopping now to inquire which class the question before us falls we content ourselves with discussing the question whether the case falls within the class of facts of which the court may at its discretion take notice of.

The rule relating to the class of facts of which the court may, at its discretion, take notice is thus stated:

"The range of facts of which the courts may, in their discretion, take judicial notice, is very extensive; but underlying it is the single principle of common notoriety, as distinguished from universal recognition." *McKelvey on Evidence,* page 33.

It is sometimes said that courts may require proof of the very facts concerning which they may take judicial notice. This is said not to be a correct statement. The court can not require proof; but it may inform itself, or may require counsel, in their capacity as officers of the court, to assist it in obtaining the requisite information from the proper sources. *McKelvey on Evidence*, page 36.

Applying that doctrine to this case, if the court wished to doubly satisfy itself respecting the fact established by common notoriety, it could advise itself or ask counsel to advise it whether the public record of the results of the election required to be made to the clerk of court of the county had been made, and what it showed. Indeed, it would seem as though this ought to be the proper course to pursue, in view of the fact that if proofs were required to be made and if made by the production of the certificate, it could have no effect in the case beyond informing the court, as will be hereinafter shown.

Clearly, within the rule last above stated, it seems to us that both the fact of the election and the result of it were facts of common notoriety, established by such public acts, that the court would be entirely justified in taking judicial notice thereof.

We are aware that there is much contrariety of view upon this subject, but within the rule stated and upon the better reason, we are compelled to the conclusion that the court should take judicial notice.

In discussing the rule last above referred to, the author says:

"The court is intelligent. It is cognizant of what is notorious in the community, and it will not always shut its eyes to such notoriety, when it becomes material in the trial of a case. While common notoriety is not sufficient to place a fact in the category of things of which notice must be taken, the cases show that courts have frequently considered themselves justified by reason of it, in dispensing with proof." *McKelvey on Evidence*, page 33.

And, the author speaking directly to this subject and with reference to the contrariety of view existing, says:

"The limits which the courts have laid down to the application of this principle are not always consistent, and an attempt

to reconcile the many decisions would prove as impracticable as useless. Judicial notice is not a substitute for proof, nor a means to strengthen a weak case. There are doubtless instances of its too extensive as well as too narrow application, but in the main the decisions may be said to follow the lines above laid down." *McKelvey on Evidence,* page 36.

In the case of *Urmston et al* v. *The State, ex rel Kuehn,* the Supreme Court of Indiana said that the court knew judicially that a township election was held on the second Tuesday in October, 1875, at which a successor to a constable ought to have been elected and the court presumed that he was elected. *73 Ind.,* page 175.

Now, what is the situation here? Here is a state law that became effective in Columbiana county only when the county voted to make its provisions operative within its boundaries. It then became a criminal statute of the state providing pains and penalties against anybody who may violate its provisions. In this case upon an affidavit charging Emma Geisse with violating its provisions a warrant was properly issued for her arrest, and she was put on trial for violating this criminal law of the state become effective in Columbiana county by the will of its electors. And it is said that before she can be convicted by the state, the state must, upon her trial, make proof that the law is in force within the county, because it does not, by its terms, become a criminal statute as to Columbiana county affecting the sale of intoxicating liquors until adopted, so to speak, by a majority of the electors of the county voting that it shall so apply.

It is conceded that when Columbiana county voted "dry" *ipso facto,* the provisions of the Rose local option law became operative within the county and thereby the traffic in intoxicating liquors within it was prohibited, and that every person within the county became thereby bound by its provisions and subject to its pains and penalties upon their violation, whether he participated in the election, or whether he knew or had notice of it, or whether he knew or had notice of the result of that election.

In view of this effect upon a person within the county, why does it become necessary to make formal proof of the election and its result? and when made, what is its effect? It is obvious

that the proof is not made for the purpose of bringing home to the person charged with the violation of the law either knowledge of the election or its result, for as already observed, he is bound to know what the law of the county in this respect is, however that law becomes effective within the county. It is also obvious that the proof when made, if it be a certified copy from the county clerk of the result of the election, can not be contradicted by the person charged. He will not even be permitted to contradict it. It is also obvious that the proof when so made is absolutely conclusive upon the jury. Indeed it would seem that while the election becomes necessary to make the lew effective within the county, it becomes thereby part of the law itself providing when it becomes effective, and is binding upon every person irrespective of notice or knowledge of the election.

If these observations be correct, why make formal proof at all? The person charged is conclusively presumed to know the law is effective within the county, and what the person charged is conclusively presumed to know in this respect may not the trial court properly take judicial notice of. It seems to us to be quite within established rule for the court to take judicial notice of the existence of the criminal statute with which the prisoner is charged with violating, and which he is conclusively presumed to know is in force.

The Rose local option law requires that the result of the election shall be certified to the clerk of the court of common pleas and spread upon the records of the court where everybody may learn about it, if they choose. It thus becomes a public record. Of this record the court may take notice, and from it he, too, may advise himself if he chooses to do so. And inasmuch as the only possible effect which the proof tendered upon trial of the election and its result could have in the case would be to advise the court of it and thereby enable him upon that proof to direct the jury accordingly, what principle of law or public policy or reasonable limitation applied to what a court may properly take judicial notice of is violated, if the court assumes to take and does take judicial notice of the fact that this law is in operation within this county? The conclusion that we have arrived at is that it was the duty of the trial court to take, as he evidently in

this case did take, judicial notice of the fact that this law was in operation within this county, and that what he properly took judicial notice of this court in reviewing this judgment may likewise take judicial notice of. Indeed, the mayor of Wellsville would properly take judicial notice of a passage of an ordinance by the municipality and that it was in force and effect within the municipality by its proper legal advertisement. If this be so, why should he not as well take notice of the fact that there had been a public election within the county and of its result when carried forward as such elections are, whereby a statute is made operative within a county? Surely if whether the court may take judicial notice of a fact depends upon the public character, public approval and public authentication of that fact, then it would seem that no fact of which a court may take judicial notice could be better verified or authenticated or more generally known, than the fact and result of such an election.

Now, we are not without authority upon this matter, and in a very well reasoned case where the statute is as near like ours as two statutes in two states so widely different and so widely separated as Georgia and Ohio, might likely be, the Supreme Court of Georgia held that the court should take judicial notice of the fact that the statute had become operative within a county as a result of an election held for that purpose.

In the Georgia statute the act provided that:

"If a majority of the local votes of the county shall be for prohibition, the clerk of the superior court of the county shall file a copy of the notice issued by him, with his certificates showing the date of the publication thereof, in his office, which notice and certificate shall be entered on the minutes of the superior court of said county and the record or a certified copy thereof shall be competent evidence to show when this act went into effect."

The question was directly before the court, whether or not the court would take judicial notice of the election. The judge giving the opinion just preceding what I am about to read refers to the fact that the court would take judicial notice of a local statute, and he proceeds: "But it is argued that, while this may be true the act itself may be recognized without proof."

"This act provides that the managers of the election shall consolidate the votes of the different precincts in the county, and make a return to the clerk of the superior court, and that the clerk shall announce the result by publishing the same in a newspaper, and that the act shall take effect on the day of the publication of the result by the clerk. It provides, further, that this notice shall be entered on the minutes of the superior court, and it shall be competent evidence to show when the act took effect. 'Courts are created to administer and enforce the law. Therefore they do and must take judicial cognizance of all laws. Whether the law was in existence is for them to say, just as fully as it rests with them whether the indictment is good or bad, or that the evidence to prove the offense alleged is legally admissible, or otherwise. To the courts alone belong the right of saying whether a statute is in force or not. The law itself having provided that the result of the election should be placed upon the minutes of the superior court, and that that entry should be competent evidence to show when the act went into effect, and the judge below having these minutes before him, there was no error in his reading from said minutes, and instructing the jury, as matter of law, as to when the act went into effect. It is the duty of the judge to know the law, and especially to know the law in his own circuit. If he should be ignorant of the local law enacted by the Legislature for any county in his circuit, or any county where he may preside, it would be his duty to inform himself of what the law is. If the act of the Legislature does not inform him as to when it went into effect, then he can look to the means provided by this act to inform himself. If the act provides that the clerk so announces the result of the election, and place it on the minutes of the court, he may look to that. If the act provides, as many of them do, that the return should be made to the ordinary of the county, and he should issue his proclamation declaring the result, then he may look to the proclamation, or have it introduced, if necessary, in evidence before him, but not before the jury. The proclamation of the clerk or ordinary is conclusive that the law has been accepted by the people, and has become effectual as a law. It being conclusive for this purpose, there would be no use or propriety in submitting the matter to a jury, because the defendant would not be allowed to controvert it, and it would be useless to submit any evidence in a criminal case to the jury which the defendant would not be allowed to controvert." *Combs* v. *State*, 8 S. E., 318 (81 Ga., 780); *Oglesby* v. *State*, 121 Ga., 602.

It seems to us this is the correct view to be taken of this question, and while courts in some other states hold otherwise, still

we think the better reason is in favor of holding that the court will take judicial notice of a question of this character.

We are not unmindful that the Rose local option law provides what shall be *prima facie* evidence of the results of such an election, but we are of opinion that that provision does not prevent the court taking judicial notice of the result of the election, if otherwise it may properly do so.

Accordingly the judgment is affirmed.